Good morning. Good morning, Your Honors. May it please the Court, my name is Elizabeth Krushak. I represent Mr. Steven Audette. I will watch the clock and try to reserve approximately four minutes for rebuttal. Mr. Audette should receive a new trial because his waiver of counsel was invalid. Ferretto requires that a valid waiver of counsel be unequivocal, knowing, and intelligent, and Mr. Audette's waiver was none of these things because... Counselor, I'm interested in why that might be the case. These cases, of course, are fact-heavy, but in this case, your client had repeatedly said what he wanted to do, and then when the judge in the colloquy explained what was before him, he expressed some fear. But his main concern was that he wanted to present the case as he saw it, and the judge clarified that counsel had indicated he wasn't prepared to do it in exactly the same way. Your client then wanted a five-minute conference with counsel, came back, and when asked whether he wanted to represent himself, said very firmly that he did. The counsel was appointed as advisory counsel. That's pretty strong. I admit there was some wavering at an earlier point, but he did that. The judge even remarked in the trial that he was one of the best lawyers he'd seen for a long time, did a really good job for himself, at least in a lawyerly sense. Why should we find that his Ferretto rights were somehow violated? For multiple reasons, Your Honor. First of all, he did equivocate during the hearing, and I don't completely agree with your characterization of his firm statement that he wanted to represent himself. So when you look at the entire context of the Ferretto hearing, he waffled repeatedly. He said, I want a new counsel or I'll be forced to go pro se. Then during the Ferretto hearing, when he was asked if he wanted to represent himself, he said, I want Mr. Borelli to represent me. There's no clearer invocation of the right to counsel than that, and he said it twice. He sort of said, gee, I'd like to have him represent me if he would do what I'd want, and then that's what led to this whole colloquy, right? He didn't firmly say, I want him to represent me. He said, I'd like him to represent me if I could talk him into putting on the defense I'd like to put on. In part, that was partly what he said. Well, what if Judge, I think it was Judge Bolton in this case, maybe it was Judge Logan. What if the district judge had said at the end of everything that occurred here, denied, you cannot represent yourself? Would we have had reversible error? No, because he equivocated. Really? I mean, once somebody conferred with counsel and the judge said, I'm asking you straight on, do you want to represent yourself, and he said yes. If the judge had denied pro se representation under that set of facts, wouldn't we be reversing? But there are other defects in the colloquy. No, I'm asking that question. So in the same colloquy, we get to the end of it, and Judge Logan says to Mr. Odette, now I'm asking you the question, you've had time to talk to counsel, do you want to represent yourself? And he said yes, and the judge said denied. Wouldn't we be here with reversible error? I don't know how you are narrowing the colloquy. I'm using exactly the same. We don't get to change the world. The world is exactly the same. The only difference is that after he says yes, the district judge says, your motion is denied, you may not represent yourself. Wouldn't we have reversible error here? No, because there's the issue of advisory counsel. Mr. Odette consistently asked for appointment of advisory counsel, and there's a way to read the colloquy in which that appointment actually in some ways induced him to represent himself, because you have to look at the entire context of the colloquy. We have other cases where we found it involuntary because the judge has refused to appoint advisory counsel. In other words, I'm trying to figure out what, if we ruled in your favor, what this does to our case law. We have cases in which we've said this is not a voluntary waiver because the defendant asked for advisory counsel, and the judge said, no, you may not have it, and therefore he forced him into the waiver. Here he asked for advisory counsel, and the judge said, I'll give you advisory counsel. What has to do with the expectations of advisory counsel? First of all, Kienenberger and Salamo and Mendez-Sanchez all state pretty clearly that when a defendant is asking for advisory counsel along with asking for self-representation, that that is not an unequivocal waiver, and I think that that is illustrated perfectly in Mr. Odette's case because what happened is he was saying, as your honors have noted, what I really want is an attorney to do whatever I want the attorney to do. To put on this cockamamie defense. To work with me. To put on the demonic possession defense. Well, I think that's your case on Friday, but. Well, what's today's crazy defense? This was the mafia case. That's right. I'm sorry. I have the two crazy defenses mixed up. Yes. This is that the U.S. government and the mafia are. I need to pay off the U.S. government to keep the mafia from attacking. Correct. He's getting money for protection to pay the agents, correct. Yes. With respect, it seems like your position is that you win either way. If your client is denied the right to represent himself, then, as my colleague suggests, you'd be back here saying, hey, this man had a firm desire to represent himself because his counsel told the judge and told my client that he would not represent him in the way he wanted to.  Now you've got the other side where the judge heard him out. He had a five-minute conference with his counsel, who was going to be his advisory counsel. He said the judge asked him firmly whether he wanted to represent himself. He did. And in reality, even though he had this crazy case, he did a good job by the judge's standards. How can we get out from the horns of this dilemma? You seem to say one way you win, the other way you win. That can't be, can it? Well, Feretta is a difficult situation, right? You're always walking a balance. What I'm saying is in this context, the judge should have denied the request for self-representation. Now that would not have precluded. And if he did, then the situation that Judge Hurwitz has described is exactly what we would be facing here. You would be here and say this man has the right to put on the defense that he wants. And the advisory counsel told the judge and told the client that he wasn't going to do that, and yet you denied him the right to represent himself. But then you could say I was wrong in that circumstance. I mean, what I might argue on behalf of my client is one thing. What the right result is, I suppose, is another thing. Is your argument that the judge should have asked more questions? My overarching argument, I think, the ultimate defect in the colloquy, is that the judge did not actually engage with what my client was saying. That's where I'm having trouble. I want to focus on precisely what your argument is. The judge did seem to engage in what your client was saying. Your client said, I'd like Mr. Borrelli to represent me. If only he would put on the defense I would like him to put on. I'm paraphrasing, but I think that's pretty close. The judge said, he's told you he's not going to do that, so go talk to him and see if you want to represent yourself or not. And then your client said, yes, I want to represent myself. Assuming that's an accurate representation of the colloquy, what else should the judge have done at that point? If he simply said no, then I think we're in the problem that Judge Smith and I worry about. So what should he have done? So he should have, first of all, he could have taken more time. This was a 30-minute Feretta hearing, during which my client did, and you may disagree with me, but he asked for representation, and it made it clear that he wanted to proceed with the lawyer. His defense counsel said he really preferred to proceed with the lawyer. This is always the problem with Feretta, a decision I think was written by no one who had ever tried a criminal case in front of a jury. In your research, did you come across a case called Tamplin v. Muniz? I don't recall that one, Your Honor. I want to make a note about it. It's a case that involved an individual who flipped back and forth between wanting to be represented and not wanting the public defender. It's actually a case in which I dissented, saying that he did equivocate, and the judge should not have allowed him to represent himself. But I lost the vote two to one. But you might want to take a look at both of you and see if it offers any kind of help. But at the end of the day, what more can a district judge do other than say, are you absolutely sure you want to represent yourself, knowing all of the risks? Well, one of the problems is that the district judge, with respect to advisory counsel, the district judge said he's going to be here to do whatever you want, whenever you need, he'll be here every minute of the trial and the pretrial. And in the context of what Mr. Audet had said that he wanted, it is possible that the judge probably inadvertently misled Mr. Audet into believing that he now had pretty close to what he wanted, which was an attorney who was going to do what he wanted. But his focus seemed to be less on the mechanics of the trial than on getting his presentation out in the way he wanted to get it out. That seemed to be the burden of everything. And for some reason, after he went to visit with counsel for five minutes, he seemed to be satisfied. Because the judge had told him before they went out to visit for five minutes that counsel had made it clear he wasn't prepared to make the defense, put on the defense in the way that your client wanted him to. Well, he said that the attorney wouldn't be able to do certain things. The attorney wanted to put on an insanity defense, did he not? The attorney, there's indications, it's a little bit, an insanity defense was not noticed, but there are indications that the attorney was focused at a minimum on some kind of mental health defense, yes. If the attorney had put on that defense over the objection of your client, would we have a problem in light of the Supreme Court's decision? Yes, you would. So your client was entitled to have the attorney not put on an insanity defense? If he objected to that, yes. Doesn't the colloquy make that rather clear? The last thing the judge does before they set him aside for five minutes and put aside whether they should have been set aside for longer for a second is say, look, your attorney won't put on the defense you want him to put on. He's told us that. So go talk to him and see if you want to keep him or not. We get to the end of the colloquy, and he says, I want to represent myself. So I'm going back to what I asked before. What more should the judge have done? Well, one thing is talk about the dangers and disadvantages of self-representation. Well, he'd done that before at great length. I disagree. I don't think he quizzed my client on his legal knowledge. Do you understand that, you know, do you know that there are rules of evidence? Do you know that there's jury selection? That sort of thing. That's really a focus on my client's legal knowledge. And he actually complimented him on his legal knowledge, which may have misled him into believing he was more equipped to represent himself than he actually was. Well, the judge says, in my opinion, I must advise you, you'd be better defended by a trained lawyer. And I highly recommend you continue with the trained lawyer. Isn't that a pretty good warning of the risks of self-representation? Well, Hayes says that insistence or a recommendation of retaining counsel is not the same as an instruction on the importance of counsel. And what wasn't conveyed to my client and what was critical that needed to be conveyed to him was that, one, there were going to be, he was going to have to abide by certain rules and restrictions. He asked twice during the colloquy for leeway. He said, I'm going to need leeway to present this defense. At that point, the district judge should have engaged with him and explained, everyone, lawyers, pro se defendants, everyone in the court is limited by the rules of evidence. And so you're not going to get any special treatment. But with respect, counsel, and I think Judge Hawkins really put his finger on this, the reality is we've put these district judges to an impossible task in this situation. This judge bent over backwards, it seemed to me, to explain the problems, explain the concern, to the point that your client said that he was afraid, he was concerned. He knew that the prosecution was going to, I think he said, was going to massacre him or whatever. Anyway, he knew he was up against a very difficult situation. But notwithstanding that fact, after he went out with his counsel and they talked together, he was comfortable enough that he came back and very clearly said he wanted to go forward because his presentation of the facts as he viewed them, even though it was not an insanity of defense, which would have been, would have fit in, he wanted to go forward. He felt very strong about it, and as my colleague points out, we've got a recent Supreme Court case that makes it pretty clear that counsel cannot give away the guts of a case. In this case, I think they had it in terms of guilt if that was contrary to the wishes of the defendant. So how do we make what happened here into some kind of a reversible error by the district court? Well, again, I think because when my client was asked if he wanted to represent himself, he was again told, you'll have advisory counsel who will be with you everywhere. So I think, and then not to mention the fact that he didn't review the elements, he didn't review the maximum penalties. He asked if my client knew what they were, but he didn't explain them, and that's not sufficient under Ferretta. In addition to the lack of the dangers and disadvantages, my client wasn't told that he wouldn't be able to, for example, claim ineffective assistance of counsel. He wasn't told that the way in which he conducted the trial may impact the way or whether he could raise issues on appeal. And so the Ferretta colloquy did not properly instruct him on the dangers and disadvantages of the self-representation. What are the reversible aspects under Ferretta that you see in the judge's conduct here? What specific things did he not say or should have said that you think our case law says is reversible error? He didn't discuss the, he didn't inform the defendant of the elements. He didn't inform him of the maximum penalties, and I've articulated that I believe that the statements that he made were not, do not comport with the requirement that a defendant be told about the dangers and disadvantages of self-representation. Also, there were issues about advisory counsel, and my client was not, say in contrast to some of the cases in which this court has said requests for advisory counsel don't make a waiver of counsel equivocal. Here, in those cases, in Moreland, for example, the role of advisory counsel was made exceedingly clear to the defendant. The defendant was actually brought in court and told he was expecting too much of advisory counsel. My client, even after the Ferretta hearing, filed paperwork saying I was forced to go pro se, I want a change of counsel, I want to build a defense, and I don't have counsel to talk with about it. So at a minimum, even if this court says the Ferretta colloquy itself was, complies with Ferretta, which I disagree with, then the court has to move to this idea that afterward my client took certain actions that indicated that he had reconsidered. Well, but he didn't, when your client, however you characterize those actions, your client didn't say, and I'd be happy to have Mr. Braley represent me. He wanted to stop the proceedings and have a new lawyer appointed, is that what you're saying? It's unclear, honestly. Yeah, I mean, that's the most generous reading of it I think I can make to your client. It's unclear. He asked for a change of counsel. Right, so he didn't want a counsel that had been appointed to appoint. Or he wanted that counsel to pay more attention to him. I mean, one of the problems is. And I understand it's a difficult client. Right. I mean, you've experienced the same issue with the client. Indeed. So I compliment you for your professionalism in this case. Thank you. But I'm just trying to figure out what the court's supposed to do at that point. I think the court has an obligation to bring my client in and try to figure out what's going on, and I acknowledge that there is difficult, I understand the context in which this is taking place, and the district court is trying. But I do think that at that point, at a minimum, the district court had an obligation to bring the parties in so that my client could discuss. And perhaps my client needed admonishment from the district court about what was and was not appropriate to expect from advisory counsel, but he didn't get that. Do you want to save any portion of your time? It's up to you, of course. I guess I would prefer to, but I also want to answer all your questions. I'll ask the question in your other time. Very well. Very well. Okay. So let's hear from the government. Good morning, Your Honors. May it please the Court. Rachel Hernandez on behalf of the United States. This is a case of overwhelming evidence. The defendant here defrauded the victims through promises, violent threats. Does that make a bit of difference on the Feretta claim? Not on the Feretta claim, but as to the other issues. But I'll go directly to Feretta. I want to find out what other issues we have. Sure. You've conceded that there should be a resentencing? Yes, Your Honor. On an open record? Yes, Your Honor. So we can forget about all the sentencing claims. Sounds good. It doesn't make a difference on the Feretta claim? The overwhelming evidence does not. Okay. Does it make a difference on the competence claim? As to the Indiana v. Edwards? Yeah. No.  So what issue does it make a difference on? As to the confrontation clause issue that was raised and as to the other issues. And as to the son? As to the son, as to the closing arguments. Okay. On the son, does it – this is the question I wanted to ask your friend, so let me ask it to you first. He wants the son to testify at trial and says the son was witness to some interactions with government agents, correct? Yes. And that he represents that the son's testimony would be helpful to his argument that he needed to pay those agents in order to protect him against the mafia. And he subpoenas the son and the son doesn't show up at trial because, as I understand it from the record, the marshals say he doesn't have a Social Security number so we can't transport him. Is that correct? Correct. What should the judge do? Well, the judge gave five trial day continuance when the – That was before. The advisory – Well, advisory council said – I'm focusing on that moment. What should the judge do? Sure. Advisory council said the witnesses would be there Tuesday. The judge gave until Thursday in terms of a recess. But he's not there – He's not there. He's not there because the government refuses to transport him, probably with good reason. I'm not questioning the reason. What should the judge do under that circumstance? Can I add in here, he didn't ask for a continuance, did he, at that point? He did not ask for a continuance. And, as I said, the court had already given more of a continuance than they had indicated was necessary. Isn't that a good example of why he should not have been representing himself? Well – The fact that he didn't move for a continuance means we look at the son's possible testimony and what the district court did under plain error, right? That's correct. However, here the defendant said also that his daughter and his sister would testify and that they would be able to substantiate his claims. And both of those people testified, and neither was able to substantiate his claims. And so the district court – Doesn't our case law suggest that we review the decision for something other than plain error? When somebody is prevented from putting a witness on – I mean, obviously he wanted to put the witness on, so he made that record. Don't we review – don't we say the judge is supposed to take the least restrictive means possible or available? The denial of a further continuance, I believe, is reviewed for abuse of discretion, but it is – a district court abuses its discretion when the refusal is arbitrary or unreasonable, and it wasn't here. The court gave plenty of time. Mr. Borelli, in talking with Mr. Audet, could have certainly made other arrangements for the witness to appear, and they didn't. And in this case, is it not correct that, as pointed out, the judge, I think, sui sponte, gave a continuance so that the three witnesses could be subpoenaed, right? Yes. And does the record indicate that they were all subpoenaed? Yes. Okay. Two of them showed up. One of them did not at the last minute. That was the son. The father had repeatedly told the jury what the son was going to say. Wasn't cross-examined on that. He just said what the son was going to say. We don't know where the son was, right? He might have been right next door. I don't think it's clear from the record. We don't know where he was. He just – he didn't show up. Mr. Audet didn't say, you know, Your Honor, this – my son is critical. I need to have him here. He just went right on without saying anything. Under the circumstances, how could that be an abuse of discretion? That's correct, Your Honor. I don't think that it meets the case law in this area that, as I said, needs to be an arbitrary or unreasonable decision by the district court to not continue. The trial – He did tell the district court what he believed the son would say, correct? He did at various times say that. And I would expect that if he had had counsel at his side or been represented by counsel, counsel would have said, we make an offer of proof this is what the son would say. Well, that's possible. To this point, there's been no offer of proof or no – as we stand here now, we don't know what Mr. Audet thinks the son would have said. Or let's get him on the telephone. Or let's get him on the phone. And he had Mr. Borelli with him, and Mr. Borelli did not suggest to the court that there be any continuance or video testimony or telephonic testimony. And that gets back to the heart of the issue between Mr. Borelli and Mr. Audet. Mr. Audet wanted more than anything else a lawyer who would believe him and a judge who would believe him. And that was at the heart of all of the disputes. So I think – Can we get back to the son for a second? Sure. Before we get back to Mr. Audet's failings. Where was the son? Does the record make it clear? I don't believe the record makes it clear. Would it make it – so we don't know whether Judge Hawkins, as Judge Hawkins asked, whether he was in Mesa or in Indonesia. I don't think the record makes it clear. Mr. Audet was living in Texas at the time he was arrested. But I was in trial counsel, and I don't have a recollection. I can't find it in the record either. So I was asking you, since I know you reviewed the record. So does it make – should the judge at least ask a question at that point of the government? Where – can he be here tomorrow afternoon? Where is he? I mean, it's – Well, I think the judge had been told the situation. This person did not have ID. I don't even know if the record is clear if this person, this son, was over 18. And so he doesn't have an ability to travel. The marshals can't get him here. And that's the information that he's told. Mr. Audet does not ask for a video conference, a video testimony, or a telephonic, or a further continuance. And the court had already given a five-day continuance at the conclusion of, I think, five or six days of testimony at that point. What role do we ascribe then to the advisory counsel? He was a lawyer. He didn't say anything either. Does that make a difference for purposes of what happens to Mr. Audet? In terms of the continuance? In terms of, you know, he's not here. Let's talk to him on the phone. Let's make some arrangements. Let's get a continuance. He didn't say anything. Does that make a difference? I think it does. I think the difference it makes is that the court did an error by not giving a further continuance. He was in the role of advisory counsel. Mr. Borelli was the one explaining to the court what was happening with the witnesses and when he expected them to arrive, and that clearly it seems that Mr. Borelli was the one coordinating with the marshals' service. And so to find the district court's actions here unreasonable or arbitrary when no other remedy was sought, I think is . . . Under the circumstances where we have an abuse of discretion standard, nobody asked for continuance. The judge had already given Souspante a five-day continuance so he could get these people. He'd had all this opportunity to put on the evidence. Mr. Borelli didn't say anything. There's no extreme exigency here. There was overwhelming evidence. Under those circumstances, can it meet either an abuse of discretion violation or is there plain error? I don't believe it can meet any of those standards. I don't believe this was erroneous at all. He has not shown that there was any actual prejudice at all from his son not appearing, not testifying. To get back to the Ferretta inquiry, does it make a difference that the defendant wants to put on what appears to be an outlandish defense? No, I don't think that makes a difference. Does the judge have some extra obligation under those circumstances? It's one thing for the guy to say, I didn't do it. Another thing to say, there's this grand conspiracy involving the government and the mafia. Does the judge under that circumstance have more of an obligation to make sure that he absolutely understands that he'll be convicted if he puts on his own defense? Well, I don't think so. I mean, of course, it sounds preposterous and it sounds far-fetched, but you have to understand, using that same claim, this man defrauded victims for over a decade to the tune of $3 million. But those are victims he had some sort of special relationship with. So apparently they were willing to believe him. Well, the first one did. The first one was a friend from chiropractor school. And actually, the fraud started by saying he was down on his luck and needed $400 to repair his car. And it morphed into this mafia story over time. The second victim, the woman here in Scottsdale, was a client of the first chiropractor, who the chiropractor said, I can't give any more money, you might want to talk to my rich patient. So I don't know that they had a special relationship. So the claims are outlandish, but people bought it. No, no, I'm not suggesting he was innocent. I'm asking under those circumstances where the judge is apprised of the nature of the defense that the pro se defendant wants to put on, does he have some extra obligation to be absolutely sure that he understands what a terrible idea this is? I don't think so. If the court's asking about an Indiana v. Edwards analysis, I don't think that was required here. The defendant was not suffering from a mental defect. He spent time at Butner. They said at most he's malingering. And as this court has pointed out, the district court noted several times throughout the case that the defendant was aware of what was happening, was asking pertinent questions. And so I don't think there was any concern. And then at the front end, if that's what you're asking about at the Faretta hearing, the court did everything that was required by the Hayes case and other cases that this court has looked at this issue. Well, counsel says one thing the judge didn't do was remind Mr. Odette of what the possible penalties were for conviction. Is that required under Faretta? It is required that he know what they are and that he be made aware of them. And what the court did here was ask him specifically, are you aware of the maximum penalties in this case? Are you aware that you may be sentenced to a consecutive term on each? And the defendant answered yes to both. And the court was aware at that time that two months prior, the prosecutor had put the maximum penalties on the record at a hearing in which the defendant was present. And the court was aware that one month before that hearing, the defendant had attempted to enter a plea agreement to I think six or seven counts and had gotten to the stage in the plea colloquy where all of the maximum penalties had been discussed. So I think it was sufficient for the court to say, are you aware? And the defendant said, I am aware. And are you aware that it can be consecutive? I am aware. And the court knew that that was true because it had been put on the record. So I think that was sufficient. Your opposing counsel seems to suggest that basically the judge in this case had to, in effect, have a Feretta hearing lurking below the entire proceeding that could be sprung at any moment. Do you agree with that? No, I don't agree with that. The case law says that once a valid waiver is made, it remains in effect even through retrial unless there's a change in circumstances. And there wasn't here. And that gets back to my point. Mr. Audet's central point and his complaint with Mr. Borrelli and his complaint with the district court and his complaint seemingly up until now is that he wants counsel that believes that he's Lucky Luciano's grandson and he was on the run from the mafia. And nothing about that changed during the entire pendency of the case. Do you think he was his grandson? I don't even want to venture a guess on that. If the court has no further questions, I'd ask that you affirm. Thank you very much. Counsel, the question I was going to ask you before it was the one I asked your colleague, could you address this on the absence of the son's testimony at trial and how do we review that and why do you think that was error? Sure. So it is an abuse of discretion standard, irrespective of whether a continuance was requested or not. When you look at the record, the district court made it clear that it wanted to assist my client. My client was told multiple times by the district court, if you need extra time, we'll get extra time. I want to make sure all your witnesses are here. And the district court was on notice that there had been some issues with that before the five-day recess. Excuse me, just to be sure I understand. Was the court on notice that the son might not be available at that point? No. I didn't think so. No, not at that point. The district court was on notice before that five-day recess. They talked about three witnesses. I think they knew at that point that two had been subpoenaed. I'm guessing that the one that was an issue still was the son, but they didn't know that at that point. It's a little unclear from the record, but it appears that the morning that trial resumed was when the marshals informed advisory council and the court that they were unable to make travel arrangements for the son because he didn't have identification. And the judge simply said, you know, oh here's an 18-year-old kid who has no identification, and advisory council says that's what I understand, and that was the end of that. What should the judge have done in your view? The judge should have offered a continuance at that point. The judge knew that, first of all, the judge had offered to do just that, and told Mr. Audet that it would not be a problem. Mr. Audet had repeatedly stated at multiple times, both in his opening statements and to the judge when they were talking about his witnesses, how important his son was to his case. How can we review that? One of my problems here is that in a case in which somebody as able as you had been handling, you would have said, judge, here's our offer of proof. If he got to the stand, the son would have said, I was with the Pope in a day and the mafia was with us, and they were saying how lucky you were to be lucky, Luciano's grandson or something like that. Abusive discretion still requires some prejudice. So how do we find prejudice on this record? So here's what I think. I acknowledge no proffer was made at the time. However, my client essentially made a proffer throughout the case. We talked about, my son is going to come, he told the jury, my son is going to come and tell you what happened, and he saw me meet with federal agents, and he knows that I was upset when I had to call and get this money and that I didn't want to. And he repeatedly talked about how his son could testify to that. And the judge had heard. Didn't he also tell the court and or the jury that the two witnesses who did come would offer testimony consistent with the son? He said they would all support him. They would all support his theory about what happened. And in fact, the two that did come didn't do that. Is that right? I disagree in part with your statement, Your Honor. I think that those two witnesses did in some ways confirm his story. Did they say Mr. Audet is the grandson of Lucky Luciano, and, yes, I saw him meet with federal agents? They didn't say that. But what they did say, his sister said, yes, he's had this longstanding preoccupation with the mafia, which does support that. His stepdaughter said, yes, we moved around a lot when I was young. My parents were afraid. For a long time we didn't have a lot of money. They never left us out of their sight. And so that is corroborating information to the overall story that Mr. Audet was telling. So I don't think it's fair to say they didn't support him at all. Well, then, if that's correct, why wouldn't the son's testimony have been cumulative? Because Mr. Audet said the son was a recipient witness to these meetings with the FBI agent, that his son had knowledge of Mr. Audet's state of mind when he was calling for the money, that he was upset and that he didn't want to call for the money. So that would go towards Mr. Audet's intent. And so I think the son added very important information, and Audet did make that proffer if you look at the entire context of the trial. Your time is up. Do my colleagues have additional questions? Thanks to both counsel for your argument. We appreciate it. This is an interesting case, and we usually don't have people that are related to such unusual folks. In any event, we thank you both. The case just argued is submitted. The court stands in recess for the day.
judges: Hawkins, M. Smith, Hurwitz